# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL W. LEDFORD, and LANA J.F. LEDFORD, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>      vs.<br><br>ROBERT W. STEIN; ISADORE H. MAY; RICHARD J. PISCIOTTA, JR; WILLIAM A. COLLINS; DAVID M. FARBER; ROBERT E. ROTHERMAN; STEPHEN E. HRUBY; DAVID BUTLER; CRUSADER SERVICING CORP.; ROYAL TAX LIEN SERVICES, LLC; ROYAL BANKSHARES OF PENNSYLVANIA, INC.; CCTS, LLC; CCTS TAX LIENS I, LLC; CCTS TAX LIENS II, LLC; DSBD, LLC; M.D. SASS INVESTORS SERVICES, INC.; M.D. SASS TAX LIEN MANAGEMENT LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – III; M.D. SASS MUNICIPAL FINANCE PARTNERS – IV, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – V, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – VI, LLC; and JOHN DOES 1-25 UNIDENTIFIED CO-CONSPIRATORS<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Samuel W. Ledford and Lana J.F. Ledford, on behalf of themselves and all others similarly situated, upon personal knowledge as to their conduct and upon information and belief as to all other matters, based on the investigation by their counsel, against all Defendants named herein, and demanding a jury trial of all claims properly triable thereby, complain and allege as follows:

## I.      INTRODUCTION

1.      This case arises out of a long-running conspiracy extending from at least January 1, 1998, through at least January 1, 2012, at minimum, among Defendants and their Co-Conspirators, the purpose and effect of which was to rig bids for, and to fix, raise, stabilize, and maintain prices, paid for municipal tax liens within the State of New Jersey sold on property owned directly by Plaintiffs and other class members defined below.

2.      Defendants and their Co-Conspirators formed a state-wide (or multi-state-wide) cartel illegally to restrict competition in the municipal tax lien market, specifically targeting municipal tax liens and the individuals and entities who own the property subject to the liens, and affecting tens or hundreds of millions of dollars of commerce throughout the State of New Jersey and perhaps other states.  The conspiracy included communications and meetings in which Defendants agreed to eliminate competition and to rig bids for, and to fix the prices of municipal tax liens.  As a result of Defendants' bid-rigging and price-fixing conduct, Plaintiffs and class members have been injured in their business and property by paying more interest on their tax liens than they would otherwise have paid in the absence of Defendants' conspiracy.

## II.      JURISDICTION AND VENUE

3.      This action is brought under Section 16 of the Clayton Antitrust Act (15 U.S.C. §26) to secure equitable relief against the Defendants due to their violations of Section 1 of the Sherman Act (15 U.S.C. § 1), as well as under the antitrust and other laws of the State of New Jersey, to obtain restitution, recover damages, and to secure other relief against the Defendants for violations of those state laws.

4.      This Court has subject-matter jurisdiction of the federal antitrust claims asserted under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1) and under Title 28, United States Code, Sections 1331 and 1337.

5.      This Court has subject-matter jurisdiction of the state-law claims asserted under Title 28, United States Code, Sections 1332(d) and 1367, and pursuant to Title 15 United States Code, Sections 4 and 15, in that the matter in controversy exceeds $5 million exclusive of

interest and costs, class members are citizens of states different from Defendants, and the action arises under the Clayton Antitrust Act.

6.     This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business in this district; (b) had substantial contacts with this district; and/or (c) was engaged in an illegal conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business in this district.

7.     Venue is proper in this district under Title 28, United States Code, Sections 1391(b) and (c), and Title 15, United States Code, Sections 15 and 22, because during the Class Period, the Defendants transacted business, were found, or had agents in this district, and because a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

8.     Defendants conduct business in this jurisdiction, and they purposefully avail themselves of the laws of the United States, including specifically the laws of the State of New Jersey.  Defendants solicit investors in furtherance of their illegal conspiracy in the flow of interstate commerce, and Defendants' activities had a direct, substantial, and reasonably-foreseeable effect on such commerce.  As a result of the activities described herein, Defendants:

a.     Caused damage to the residents of the state of New Jersey;

b.     Caused damage in the State of New Jersey by acts or omissions committed outside the State of New Jersey and by regularly doing or soliciting business in the State of New Jersey;

c.     Engaged in persistent courses of conduct within the State of New Jersey and/or derived substantial revenue from the purchase of municipal tax liens (and services related to such purchases) in the State of New Jersey; and

d.     Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damages) in the State of New Jersey while regularly doing or soliciting business in the State of New Jersey, engaging in other persistent courses of

conduct in the State of New Jersey, and/or deriving substantial revenue from the purchase of municipal tax liens in the State of New Jersey.

9.      The conspiracy described herein adversely affected every person in the State of New Jersey, and, more particularly, individuals and entities in the State of New Jersey who were subject to the municipal tax liens Defendants purchased.  Defendants' conspiracy has resulted in an adverse monetary effect on the class members identified herein.

10.     Prices and interest rates on municipal tax liens in the State of New Jersey were raised to supra-competitive levels by Defendants and their Co-Conspirators.  Defendants knew that commerce in municipal tax liens, and that the interest rates ultimately paid by property owners subject to those municipal tax liens, would be adversely affected by implementing their conspiracy in the State of New Jersey.

### III.      DEFINITIONS

11.     "Municipal tax liens" refer to a statutory restriction on real property imposed by the municipalities of the State of New Jersey.

12.     "Class Period" refers to the time period of January 1, 1998 to the date this complaint is filed.

### IV.      THE PARTIES

#### A.      The Plaintiffs

13.     Plaintiffs Samuel W. Ledford and Lana J.F. Ledford, husband/wife, are residents and citizens of New Jersey, and held title to the property identified as 2568 Starr Road, Pennsauken, New Jersey 08109.  A Tax Sale Certificate was issued on November 19, 2008, and purchased by CCTS Tax Lien II LLC.  As a direct result of the Defendants' alleged conduct, the interest on Plaintiffs' lien was set artificially high and Plaintiffs were damaged as a result. Currently, Plaintiffs are facing foreclosure due to the artificially inflated interest rate associated with the municipal tax lien on their property.

14.     Plaintiffs Samuel W. Ledford and Lana J.F. Ledford (collectively "Plaintiffs") and all class members were injured in their business and property by paying more interest on their municipal tax liens than they would otherwise have paid in the absence of Defendants' conspiracy.

### B.     The Defendants

15.     Defendant Robert W. Stein is an individual residing in Huntingdon Valley, Pennsylvania.  Mr. Stein, along with Defendant Royal Bancshares of Pennsylvania, Inc., jointly owned Defendant Crusader Servicing Corporation.  On or about November 2010, Mr. Stein was terminated from his position as president of both organizations for his involvement in these conspiracies.  Defendant Stein knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

16.     Defendant Isadore H. May is an individual residing in Margate City, New Jersey. Defendant May knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

17.     Defendant Richard J. Pisciotta, Jr., is an individual residing in Long Beach Township, New Jersey.  Defendant Pisciotta knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

18.     Defendant William A. Collins is an individual residing in Medford, New Jersey. Defendant Collins knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

19.     Defendant David M. Farber is an individual residing in Cherry Hill, New Jersey. Defendant Farber knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

20.     Defendant Robert E. Rotherman is an individual residing in New York, New York.  Defendant Rotherman knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

21.     Defendant Stephen E. Hruby is an individual residing in Hainesport, New Jersey. Defendant Hruby knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

22.     Defendant David Butler is an individual residing in Cherry Hill, New Jersey. Defendant Butler knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

23.     Defendant Crusader Servicing Corporation ("CSC") is a Pennsylvania corporation with its principal place of business in Jenkintown, Pennsylvania.  Defendant CSC, operating as a subsidiary of Defendant Royal Bancshares of Pennsylvania, Inc. ("RBPI"), knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

24.     Defendant Royal Tax Lien Services, LLC, ("RTLS") is a Pennsylvania corporation with its principal place of business in Jenkintown, Pennsylvania.  Defendant RTLS, operating as a subsidiary of Royal Bank America, knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

25.     Defendant RBPI is a Pennsylvania corporation with its principal place of business in Narbeth, Pennsylvania.  Defendant RBPI does business in New Jersey and throughout the United States as a bank holding company.  Defendant RBPI knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

26.     Defendant CCTS, LLC ("CCTS") is a limited liability company with its principal place of business in Cherry Hill, New Jersey.  Defendant CCTS knowingly participated in the

alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

27.     Defendant CCTS Tax Liens I, LLC ("CCTS I") is  limited liability company with its principal place of business in Cherry Hill, New Jersey.  Defendant CCTS knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

28.     Defendant CCTS Tax Liens II, LLC ("CCTS II") is a limited liability company with its principal place of business in Cherry Hill, New Jersey.  Defendant CCTS knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

29.     Defendant DSBD, LLC, is a limited liability company with its principal place of business in Barrington, New Jersey, and subsequently in Cherry Hill, New Jersey.  DSBD managed investments and oversaw the acquisition of municipal tax liens from the State of New Jersey for CCTS, CCTS I, and CCTS II.

30.     Defendant M.D. Sass Investors Services, Inc., is a Delaware corporation with its principal place of business in New York, New York.  Defendant M.D. Sass Investors Services, Inc., knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

31.     Defendant M.D. Sass Tax Lien Management, LLC, is a New York limited liability company with its principal place of business in New York, New York.  Defendant M.D. Sass Tax Lien Management, LLC, knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

32.     Defendant M.D. Sass Municipal Finance Partners – III, LLC, is a Delaware limited liability company with its principal place of business in New York, New York. Defendant M.D. Sass Municipal Finance Partners – III, LLC, knowingly participated in the

alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

33.     Defendant M.D. Sass Municipal Finance Partners – IV, LLC, is a Delaware limited liability company with its principal place of business in New York, New York. Defendant M.D. Sass Municipal Finance Partners – IV, LLC, knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

34.     Defendant M.D. Sass Municipal Finance Partners – V, LLC, is a Delaware limited liability company with its principal place of business in New York, New York.  Defendant M.D. Sass Municipal Finance Partners – V, LLC, knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

35.     Defendant M.D. Sass Municipal Finance Partners – VI, LLC, is a Delaware limited liability company with its principal place of business in New York, New York. Defendant M.D. Sass Municipal Finance Partners – VI, LLC, knowingly participated in the alleged conspiracy by purchasing municipal tax liens in this district, and possibly throughout the United States, during the Class Period.

36.     Defendants "John Does 1 through 25" are fictitiously named individuals, designated to represent other principals, officers, directors, associates, affiliates, agents, or employees of the specifically named Defendants whose actual identities are not presently known, but may be otherwise involved in, or aided and abetted the transactions, wrongdoing, and otherwise actionable matters set forth here.

37.     Each Defendant named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

C.     **The Co-Conspirators**

38.     Various persons and entities, presently unknown to Plaintiffs, participated as Co-Conspirators with Defendants in the violations alleged herein and performed acts and made statements in furtherance of the conspiracy and/or in furtherance of the anticompetitive, unfair or deceptive conduct.  Plaintiffs reserve the right to add some or all of them as named Defendants or named Co-Conspirators at a later date.

39.     The acts charged herein have been done by Defendants and their Co-Conspirators, or were authorized, ordered, done, or ratified by their respective officers, agents, employees, or representatives while actively engaged in the management of each Defendant's business or affairs.

### V.     NATURE OF ACTION

40.     This is a class action brought against Defendants Robert W. Stein; Isadore H. May; Richard J. Pisciotta, Jr.; William A. Collins; David M. Farber; Robert E. Rotherman; Stephen E. Hruby; David Butler; CSC; RTLS; RBPI; CCTS; CCTS I; CCTS II; DSBD; M.D. Sass Investors Services, Inc.; M.D. Sass Tax Lien Management, LLC; M.D. Sass Municipal Finance Partners – III, LLC; M.D. Sass Municipal Finance Partners – IV, LLC; M.D. Sass Municipal Finance Partners – V, LLC; and M.D. Sass Municipal Finance Partners – VI, LLC (collectively "Defendants"), for engaging in a conspiracy to unlawfully fix, submit, and enforce non-competitive and collusive bids on municipal tax liens of personal property.

41.     Plaintiffs seek to represent taxpayers and home owners whose property was subject to a municipal tax lien in the State of New Jersey, which was purchased by a known or yet unknown Defendants, or were adversely affected due to the herein alleged conspiracy, during the Class Period.

42.     Defendants and their Co-Conspirators are corporations and limited liability corporations, which bid on and purchases municipal tax liens, in the United States, including the State of New Jersey.

43.     Defendants and their Co-Conspirators agreed, combined and conspired to rig bids for, inflate, fix, raise, and artificially maintain prices of the purchase of municipal tax liens.

44.     Antitrust law enforcement authorities in the United States have been investigating a conspiracy in the municipal tax lien market.  As part of its ongoing criminal investigation, the United States Department of Justice ("DOJ") has brought criminal charges against Robert W. Stein, Isadore H. May, Richard J. Pisciotta Jr., William A. Collins, David M. Farber, Robert E. Rothman, Stephen E. Hruby, David Butler and DSBD, who are each scheduled for sentencing in the summer of 2012.  Each individual pled guilty to one count in combination with the conspiracy to rig bids for, and to fix, raise, stabilize, and maintain the price paid for municipal tax liens within the State of New Jersey.

45.     Defendants each pled guilty to a criminal information brought by the United States, charging that, from at least as early as January 1998 and continuing until at least 2010, and varying time periods within that period, conspirators participated in a combination and conspiracy to suppress and eliminate competition at the auction for the sale of municipal tax liens in the State of New Jersey.

46.     As part of their plea agreements, each Defendant has agreed to assist the DOJ in its ongoing criminal investigation into the sale of municipal tax liens.

47.     As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and class members, as defined below, paid artificially inflated interest rates for the municipal liens taken against their homes and Defendants were unjustly enriched during the Class Period.  Plaintiffs have thereby suffered injury to their property.

### VI.     DEFENDANTS' WRONGFUL COURSE OF CONDUCT

48.     Defendants purchased, or managed the acquisitions of the purchasing company, municipal tax liens during the public auctions of such liens.

49.     When real property owners in the State of New Jersey become delinquent on a payment of property taxes, including water and/or sewer taxes, the municipality where the property is located, will on an annual basis, place the municipal tax lien on auction for members

of the public to purchase at auction.  Each municipal tax lien normally includes the price of the delinquent taxes, accrued interest and any statutory costs and penalties, which must be paid back by the property owner to the successful bidder.

50.     From at least as early as January 1998 and continuing until at least January 2012, the exact dates being unknown, Defendants and their Co-Conspirators participated in a combination and conspiracy to suppress and eliminate competition in the public municipal tax lien sales by agreeing to rig bids for and to fix the prices of, municipal tax liens purchased in New Jersey and perhaps elsewhere.  The combination and conspiracy was an unreasonable restraint of interstate trade and commerce.

51.     The combination and conspiracy consisted of a continuing agreement and understanding among Defendants, the substantial terms of which were to rig bids for and to fix the prices of, municipal tax liens in the State of New Jersey.

A.     **The Structure and Characteristics of the Municipal Tax Lien Auctions Made Collusion Attractive**

52.     The structure and other characteristics of the municipal tax lien auctions are conducive to a bid rigging agreement, and have made collusion particularly attractive.  The auctions have the following characteristics: well established form of commerce and opportunities to conspire.

1.     **The Municipal Tax Lien Sales are an Established Form of Commerce**

53.     When an owner of property in the State of New Jersey is delinquent on a payment of property taxes on his real estate, including water and/or sewer taxes, the municipality where the real estate is located, can on an annual basis, hold a public tax lien auction as established by Title 54, Subsection 2, Chapter 5 of the New Jersey Revised Taxes, N.J.S.A. 54:5-1, et. seq.

54.     The municipal tax liens are legal restrictions on the real property, due to an accrual of real estate taxes or other charges, against the title interest of the owner of the property in a New Jersey municipality.

55.     Each of the 567 municipalities must hold at least one auction annually.  As a result, each year, there are at least 567 tax lien sales across New Jersey.  Prior to each auction, the municipalities, are required by statute to give public notice of the date, time and place of the auction, including a list of the delinquent tax liens for auction.

56.     Bidders at these public auctions can be individuals, companies, banks, or other financial institutions.  These auctions are a form of commerce in New Jersey due to the fact that often the buyers of the lien are non-residents, and/or the funds used to purchase the obligation originate outside of New Jersey.

57.     At auction, bidders will bid on an interest rate they are willing to pay, and which the property owner must pay to a successful bidder in order to satisfy their municipal lien.  The statutory maximum for each municipal lien is set at 18 percent.

58.     The bidding process is set to be a competitive form of commerce, with bids starting at 18 percent.  In a market free of collusion, the interest rate will normally be driven down by the competitive bidding process to the single digits, or at times as low as 0 percent.

59.     Each successful bidder is entitled to statutory fees and penalties on the municipal lien, which is separate from the interest rate the property owner must pay to the winning bidder.  The bidder remits the delinquent tax amount to the municipality and is then entitled to record the tax lien against the real property, collecting from the fee title owner the delinquent amount plus the accruing interest rate established at auction.

60.     The fee title owner has a statutory grace period of two years, during which time the delinquent amount continues to accrue interest at the established rate.  In a typical market, the owner would receive the advantage due from the competitive bidding process driving the interest rates down to a reasonable rate.  If the delinquent amount, plus interest, is not paid in the two years, the tax lien can be foreclosed by the successful bidder who applies to the Court for a transfer of title, in fee simple, from the property owner to the holder of the tax lien, thereby placing the property back into the stream of commerce.

### 2.   Defendants Had Ample Opportunities to Conspire

61.   Defendants had regular communications and meetings in order to perform acts necessary for the formation, operation, and furtherance of the conspiracy to eliminate competition and to rig bids for, and fix the interest rates of municipal tax liens.  For example, several of the Defendants are either wholly owned or controlled by other Defendants, which resulted in corporations existing for the purpose of purchasing tax liens at artificially agreed upon prices.

### B.   Government Investigations

62.   A coordinated antitrust investigation is underway in the United States, as part of the Financial Fraud Enforcement Task Force (FFETF), which was established to proactively investigate and prosecute financial crimes and recover proceeds for victims of financial crimes. The ongoing investigation is being conducted by the Department of Justice Antitrust Division's New York Field office and the FBI's Atlantic City, New Jersey, office.

63.   As a result of the investigations, seven guilty pleas have been entered.  Each individual pled guilty to a violation of the Sherman Act, which carries a maximum penalty of 10 years in prison and a $1 million fine for each individual.

64.   On April 17, 2012, at the most recent guilty plea hearing, Sharis A. Pozen, Acting Assistant Attorney General in charge of the Antitrust Division, stated, "[t]he division will continue to prosecute the perpetrators of anticompetitive bid rigging schemes at municipal tax lien auctions in New Jersey and elsewhere."

### C.   Guilty Pleas

65.   On August 24, 2011, Isadore H. May, Richard J. Pisciotta Jr., and William A. Collins pled guilty to one-count information charging each with conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) for their role in a criminal price-fixing and bid-rigging conspiracy involving the purchase of municipal tax liens in the State of New Jersey.

66.   On February 23, 2012, Robert W. Stein and David M. Farber pled guilty to a one-count information charging each with conspiracy in violation of Section 1 of the Sherman Act

(15 U.S.C. § 1) for their role in a criminal price-fixing and bid-rigging conspiracy involving the purchase of municipal tax liens in the State of New Jersey.

67.     On March 27, 2012, Robert E. Rothman pled guilty to a one-count information charging him with conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) for his role in a criminal price-fixing and bid-rigging conspiracy involving the purchase of municipal tax liens in the State of New Jersey.

68.     On April 17, 2012, Stephen E. Hruby pled guilty to a one-count information charging him with conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) for his role in a criminal price-fixing and bid-rigging conspiracy involving the purchase of municipal tax liens in the State of New Jersey.

69.     On April 23, 2012, David Butler pled guilty to a one-count information charging him with conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) for his role in a criminal price-fixing and bid-rigging conspiracy involving the purchase of municipal tax liens in the State of New Jersey.

70.     On April 23, 2012, DSBD, LLC, pled guilty to a one-count information charging it with conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) for its role in a criminal price-fixing and bid-rigging conspiracy involving the purchase of municipal tax liens in the State of New Jersey.

71.     According to the information filed, each Defendant and its Co-Conspirators carried out the conspiracy by:

a.      Attending meetings, conversations, and communications regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;

b.      Agreeing, during those meetings, conversations, and communications, not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding on;

c.      Agreeing, during those meetings, conversations, and communications, submit bids in accordance with the agreements reached;

d.     Submitting bids, price quotations, and price adjustments on municipal tax liens in accordance with the agreements reached during those meetings, conversations, and communications; and

e.     Purchasing municipal tax liens pursuant to agreements reached during those meetings, conversations, and communications at collusive and non-competitive interest rates.

72.     Sharis A. Pozen, Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division, stated: "Because the conspiracies permitted the conspirators to purchase tax liens with limited competition, each conspirator was able to obtain liens which earned a higher interest rate."  She further stated: "Property owners were therefore made to pay higher interest on their tax debts than they would have paid had their liens been purchased in open and honest competition."

## VII.   MANNER AND MEANS OF THE CONSPIRACY

73.     For purposes of forming and carrying out the charged combination and conspiracy, Defendants did those things that they combined and conspired to do, including, among other things:

a.     Participating in meetings, conversations, and communications in the United States, including the State of New Jersey, to discuss the bids and interest rates to be used at the municipal tax lien sales in the State of New Jersey;

b.     Agreeing, during those meetings, conversations, and communications, on bids and price quotations on certain municipal tax liens at auction;

c.     Agreeing during those meetings, conversations, and communications, to not compete at certain tax lien auctions by allocating who would bid on or refrain from bidding on certain sales;

d.     Submitting bids in accordance with the agreements reached;

e.     Purchasing tax liens in accordance with the agreements reached at collusive and non-competitive interest rates;

f.    Accepting payments from the owners of the tax lien property at artificially high interest rates; and

g.    Pursuing foreclosure action against property owners who could not afford to pay the artificially high interest rates on the municipal tax liens established during the meetings, conversations, and communications of the Defendants.

## VIII.   TRADE AND COMMERCE

74.    During the period covered by this Complaint, Defendants and Co-Conspirators purchased multiple municipal tax liens in the State of New Jersey with funds from outside of the State of New Jersey.  The business activities of Defendants in connection with the purchase of municipal tax liens that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

## IX.    CLASS ACTION ALLEGATIONS

75.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23 of the Federal Rules of Civil Procedure for injunctive relief on behalf of all members of the following plaintiff class ("the Class"):

> All persons and entities residing in the United States who, during the Class Period, were property owners in the State of New Jersey, who as a result of conspiratorial and collusive action from any Defendant or any current or former subsidiary or affiliate thereof, or any Co-Conspirator, suffered the encumbering of their real property by a public municipal tax lien purchased either directly or indirectly by any Defendant(s) named above.

76.    Specifically excluded from the foregoing Class and each Class listed below are Defendants; the officers, directors or employees of any Defendant; the legal representatives and heirs or assigns of any Defendant; and the named affiliates and Co-Conspirators.  Also excluded are any federal, state, or local governmental entity, any judicial officer presiding over this action, and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

77.    Plaintiffs do not know the exact number of Class members.  However, Plaintiffs believe there are hundreds or thousands of Class members, geographically dispersed throughout

the State of New Jersey, and possibly the United States, such that joinder of all Class members would be impracticable.

78.     Plaintiffs' claims are typical of the claims of Class members, and Plaintiffs would fairly and adequately protect the interests of the Class.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class members.  Plaintiffs have retained competent counsel experienced in class action and complex antitrust litigation.

79.     Common questions of law and fact exist, including:

a.      Whether Defendants and their Co-Conspirators engaged in a contract, combination, or conspiracy among themselves to fix the price of, or allocate the purchase of, municipal tax liens in the United States, including the State of New Jersey;

b.      What was the duration and extent of the contract, combination, or conspiracy;

c.      Whether Defendants and their Co-Conspirators were participants in the contracts, combinations, or conspiracies alleged herein;

d.      Whether Defendants and their Co-Conspirators engaged in conduct that violated Section 1 of the Sherman Act;

e.      Whether Defendants and their Co-Conspirators engaged in unlawful, unfair, or deceptive contracts, combinations or conspiracies among themselves, express or implied, to fix the price and interest rates of municipal tax liens purchased in the United States, including the State of New Jersey;

f.      Whether Defendants and their Co-Conspirators engaged in conduct in violation of federal antitrust laws;

g.      Whether Defendants' and their Co-Conspirators' anticompetitive conduct caused interest rates on municipal tax liens to be artificially inflated to non-competitive levels;

h.      Whether Defendants and their Co-Conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of Class members;

i.     Whether Defendants and their Co-Conspirators fraudulently concealed the existence of their unlawful conduct;

j.     Whether Plaintiffs and Class members are entitled to injunctive relief; and

k.     Whether Plaintiffs and Class members were injured by Defendants' conduct and, if so, the appropriate measure of damages.

80.    These and other questions of law and fact are common to Class members and predominate over any questions affecting only individual members, including legal and factual issues relating to liability, damages, and restitution.

81.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy because:

a.     It will avoid a multiplicity of suits and consequent burden on the courts and Defendants;

b.     It would be virtually impossible for all Class members to intervene as party-Plaintiffs in this action;

c.     It will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation to obtain redress for their economic injuries;

d.     It is appropriate for treatment on a fluid-recovery basis, which obviates any manageability problems; and

e.     It will provide court oversight of the claims process, once Defendants' liability is adjudicated.

82.    This case is also appropriate for certification as a class action because the Defendants have acted and refused to act on grounds generally applicable to the Class, so that final injunctive relief will be appropriate with respect to the Class as a whole.

83.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## X.   ACTIVE CONCEALMENT

84.   Plaintiffs and Class members did not discover, and could not have discovered, through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until after August 24, 2011, when the investigations by the DOJ became public, because Defendants and their Co-Conspirators actively and fraudulently concealed the existence of their contract, combination, and conspiracy.  Because Defendants' agreement, understanding, and conspiracy were kept secret, Plaintiffs and Class members were unaware of Defendants' unlawful conduct alleged herein and did not know that they were paying artificially fixed interest rates on their municipal tax liens.

85.   Defendants' affirmative acts alleged herein, including acts in furtherance of the conspiracy, were actively concealed and carried out in a manner that precluded detection.

86.   By its very nature, Defendants' price-fixing conspiracy was inherently self-concealing.  As alleged above, Defendants had secret discussions about who would purchase certain tax liens at each municipal auction.  Defendants employed means to keep their conduct secret, including using other corporations to manage the acquisition of the tax liens.

87.   As a result of Defendants' active concealment of their conspiracy, the running of any statue of limitations has been tolled with respect to any claims that Plaintiffs and Class members have as a result of the anticompetitive conduct alleged herein.

## XI.   VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

88.   Plaintiffs incorporate by reference each and every allegation in the paragraphs above as fully set forth herein.

89.   Beginning at a time currently unknown to Plaintiffs, but at least as early as January 1, 1998, and continuing through the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their Co-Conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially rig bids for the

purchase of municipal tax liens in the United States, including the State of New Jersey, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

90.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their Co-Conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct alleged above, and the following, among others:

a.    Fixing, stabilizing, and pegging the interest rate on municipal tax liens;

b.    Submitting rigged bids for the award and performance of certain municipal tax lien sales at auction;

c.    Allocating among themselves the opportunity to bid on the municipal tax liens; and

d.    Allocating among themselves and collusively reducing the purchase price of the municipal tax liens will artificially fixing the interest rate at a non-competitive price.

91.    The combination and conspiracy alleged herein has had the following effects, among others:

a.    Price competition in the purchase of municipal tax liens has been restrained, suppressed, and/or eliminated in the United States, including the State of New Jersey;

b.    Prices for municipal tax liens purchased by Defendants and their Co-Conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States, including the State of New Jersey; and

c.    Those who must pay the artificially high interest rate directly to the Defendants and their Co-Conspirators have been deprived of the benefit of free and open competition.

92.    Plaintiffs and other Class members have been injured and will continue to be injured in their business and property by paying artificially high interest rates to Defendants and their Co-Conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including artificially high interest rates on their delinquent municipal tax liens.

93.     Plaintiffs and the class members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## Second Claim for Relief

## (Violation of State Antitrust Laws)

94.     Plaintiffs incorporate by reference each and every allegation in the paragraphs above as fully set forth herein.

95.      By reason of the foregoing, Defendants have violated New Jersey Anti-Trust Act, N.J.S.A. 56:9-1, *et seq*.

96.     Under N.J.S.A. 56:9-11, a plea of guilty to a criminal violation of 15 U.S.C. Section 1 is equivalent to a plea of guilty under the New Jersey Anti-Trust Act, and as a matter of law is deemed a "final judgment or decree" for the purposes of N.J.S.A. 56:9-13.

## Third Claim for Relief

## (Unjust Enrichment and Disgorgement)

97.     Plaintiffs incorporate by reference each and every allegation in the paragraphs above as fully set forth herein.

98.     Defendants have been unjustly enriched through overpayments by Plaintiffs and Class members and the resulting profits.

99.     Under common-law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiffs and Class members in New Jersey.

100.    Plaintiffs and Class members herein seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as set forth below:

A. That this Court determine that the Sherman Act, state antitrust law, and state consumer protection and unfair competition law claims alleged herein may be maintained as class actions under Rule 23(a), (b)(2), and (b)(3) of the Federal Rule of Civil Procedure.

B. That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudicated and decreed to be:

      1. A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

      2. An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of New Jersey antitrust law identified in the Second Claim for Relief herein; and

      3. Acts of unjust enrichment as alleged in the Third Claim for Relief herein.

A. That Plaintiffs and the Class alleged herein recover damages, to the maximum extent allowable under such laws as provided by state antitrust laws, and that a joint and several judgment in favor of Plaintiffs and the Class be entered against Defendants in an amount to be trebled to the extent permitted by such laws;

B. That Plaintiffs and Class members alleged herein recover damages, to the maximum extent allowable by state consumer protection laws;

C. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from, in any manner, continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

D.    That Plaintiffs and Class members be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

E.    That Plaintiffs and Class members be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

F.    That Plaintiffs and Class members recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

G.    That Plaintiffs and Class members have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.


Dated: May 11, 2012

By: /s/ William Riback
William Riback, Esq.
WILLIAM RIBACK, LLC
132 Haddon Avenue
Haddonfield, NJ  08033
Telephone - (856) 857-0008
william.riback132@gmail.com

Eric B. Snyder (*Pro Hac Vice to Follow*)
Patricia M. Kipnis (NJ Bar # 016962003)
Katherine E. Charonko (*Pro Hac Vice to Follow*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV  25301
Telephone – 304-345-6555
Facsimile – 304-342-1110
esnyder@baileyglasser.com
pkipnis@baileyglasser.com
kcharonko@baileyglasser.com

Michael R. Mignogna, Esq.
Mattleman, Weinroth & Miller, P.C.
401 Route 70 East, Suite 100
Cherry Hill, NJ 08034
Phone: 856-429-5507 Ext. 316
Fax: 856-429-9036
mmignogna@mwm-law.com

*Attorneys for Plaintiffs Samuel W. Ledford,
Lana J.F. Ledford and the Proposed Classes*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  May 11, 2012

By: /s/ William Riback, Esq.
William Riback, Esq.
WILLIAM RIBACK, LLC
132 Haddon Avenue
Haddonfield, NJ  08033
Telephone - (856) 857-0008
william.riback132@gmail.com

Eric B. Snyder (*Pro Hac Vice to Follow*)
Patricia M. Kipnis (NJ Bar # 016962003)
Katherine E. Charonko (*Pro Hac Vice to Follow*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV  25301
Telephone – 304-345-6555
Facsimile – 304-342-1110
esnyder@baileyglasser.com
pkipnis@baileyglasser.com
kcharonko@baileyglasser.com

Michael R. Mignogna, Esq.
Mattleman, Weinroth & Miller, P.C.
401 Route 70 East, Suite 100
Cherry Hill, NJ 08034
Phone: 856-429-5507 Ext. 316
Fax: 856-429-9036
mmignogna@mwm-law.com

*Attorneys for Plaintiffs Samuel W. Ledford,
Lana J.F. Ledford and the Proposed Classes*